27 C.C.P.A. (Patents)

## In re DRESHFIELD (two cases).

### Patent Appeals Nos. 4282, 4283.

Court of Customs and Patent Appeals.

March 20, 1940.

Rehearing Denied April 29, 1940.

Edward B. Beale, of Washington, D. C., for appellant.

Howard S. Miller, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

These are appeals from the decisions of the Board of Appeals of the United States Patent Office affirming the decisions of the Primary Examiner rejecting claims Nos. 1 to 5, inclusive, 8, 15, 16, and 17 in appellant's application, serial No. 152,194 (appeal No. 4282) for an alleged invention relating to improvements in dry rosin size, and claims Nos. 1 to 5, inclusive, and 8 in appellant's application, serial No. 8,472 (appeal No. 4283), for an alleged invention relating to improvements in dry rosin size.

In this court, counsel for appellant moved that the following claims be dismissed: Claim No. 1 in appeal No. 4282, and claims Nos. 1, 2, 3, 5, and 8 in appeal No. 4283.

The motion is granted.

This leaves for our consideration claims 2 to 5, inclusive, 8, 15, 16, and 17 in ap-

peal No. 4282, and claim 4 in appeal No. 4283.

Claim 4 in the two appeals is identical; accordingly, the appeals may be disposed of in one opinion.

It may be said in explanation of the filing of the two appeals in this court containing identical or substantially identical claims to the same invention that appellant's application, serial No. 152,194 (involved in appeal No. 4282), was filed July 6, 1937, as a continuation in part of his application, serial No. 8,472 (filed February 27, 1935); that, according to the brief of counsel for appellant, application No. 152,-194 (involved in appeal No. 4282) "was filed in order to include, as part of its disclosure, additional anti-oxidants which had been tested and found satisfactory subsequent to the filing of the parent application [serial No. 8,472 involved in appeal No. 4283]"; that both applications were finally rejected by the Board of Appeals, so far as the appealed claims are concerned, at approximately the same time; and that counsel for appellant filed in this court appeal No. 4283, which involves the parent application, for the reason, among others which need not be stated here, that it was "feared that acquiescence in the decision of the Board of Appeals in the parent case might work an unwelcome estoppel on the plea of res judicata." It should be further stated that the Primary Examiner allowed certain specific claims—Nos. 6, 7, and 9 to 14, inclusive, in appeal No. 4282, and Nos. 6, 7, 9, 10, and 11 in appeal No. 4283.

Claim No. 4 which is involved in both appeals, claim 8, and claims 15, 16, and 17, in appeal No. 4282 which are more specific than claims 4 and 8 are illustrative of the appealed claims. They read:

"4. A dry size resistant to oxidation comprising saponified rosin, free rosin and an antioxidant for the saponified and free rosin."

"8. A dry size resistant to oxidation comprising discrete, dry particles of rosin size containing an organic rosin-free antioxidant for rosin size."

"15. A dry rosin size resistant to oxidation comprising discrete particles of dried saponified rosin and as an antioxidant for the saponified rosin, an antioxidant aromatic amino compound having at least two of its amino hydrogen atoms replaced by aryl groups, the said dry size being characterized by its resistance to oxidation when subjected to the Mackay test for a period of about 48 hours.

"16. A dry rosin size resistant to oxidation comprising discrete particles of dried saponified rosin and as an antioxidant for the saponified rosin, an antioxidant aromatic amino compound, the said dry size being characterized by its resistance to oxidation when subjected to the Mackay test for a period of about 48 hours.

"17. A dry rosin size resistant to oxidation comprising discrete particles of dried saponified rosin and as an antioxidant for the saponified rosin, an antioxidant organic compound characterized by having at least one nitrogen atom and at least two aryl groups in the molecule, the said dry size being characterized by its resistance to oxidation when subjected to the Mackay test for a period of about 48 hours."

The reference relied upon by the Primary Examiner and the Board of Appeals in appeal No. 4283, and by the board only in appeal No. 4282, is: "Use of Rosin for Soap Manufacture," by Campbell, published in "Industrial and Engineering Chemistry," Vol. 26, No. 7, July 1934, pages 718 and 719.

As will be observed from the quoted claims, appellant's dry rosin size, which is resistant to oxidation, comprises, in addition to an antioxidant, saponified rosin (as stated in appealed claims 2, 8, 15, 16, and 17) saponified abietic acid (as stated in appealed claim 3), saponified rosin and free alkali (as stated in claim 5), or saponified rosin and free rosin (as stated in appealed claim 4). With the exception of appealed claims 15, 16, and 17, which will be hereinafter discussed, all of the appealed claims call broadly for a dry rosin size made resistant to oxidation by the presence of either "an antioxidant" or, as stated in some of the claims, "an organic rosin-free antioxidant."

Counsel for appellant contends that, owing to the fact that appellant was the first to produce a dry rosin size suitable for use in the paper industry for which he and a joint inventor received two patents—one for the dry rosin size (patent No. 2,134,912, issued November 1, 1938, on an application filed May 11, 1935), and the other for a method of making the same (patent No. 2,134,911, issued November 1, 1938, on an application filed May 11, 1935)—he is now entitled to claim broadly a dry rosin size

made resistant to oxidation by means of the presence of an antioxidant; that prior to the issuance of those patents the rosin size used in the paper industry contained approximately 20 per centum of water and was in the form of paste; and that rosin size in paste form had certain disadvantages.

It is stated in the brief of counsel for appellant that sometime after appellant's *dry rosin size* was used commercially it was discovered that "contrary to all expectations, the dry size was unstable"; that it "possessed a tendency to decompose upon storage"; that "in one instance a very serious fire arising from spontaneous combustion was averted only by extreme diligence"; that appellant's dry rosin size was stabilized by adding an antioxidant, and is now commercially successful.

We find nothing of record to support such statements.

In each of appellant's involved applications it is stated that: "The dry forms of size, and particularly the type formed by spraying, are, however, open to a substantial objection in that they tend to oxidize in the presence of air. Where, as is not uncommon, some free rosin is contained in the size, there is a greater tendency to oxidize. Oxidation and consequent heating of dry size is deleterious to the size and generally undesirable where it is to be stored for any length of time, or shipped over any considerable distance."

In appeal No. 4283, in which only appealed claim 4 is involved, the Primary Examiner, in his statement to the Board of Appeals, stated, among other things, that: "The Campbell publication, page 719, last paragraph, states that rosin soaps and free rosin take up oxygen from the air, and this paragraph also states that rosin is an antioxidant for soap. * * * The Campbell publication, page 719, last paragraph, states that rosin soaps and free rosin take up oxygen from the air, and this paragraph also teaches the broad idea of adding an antioxidant (rosin) to soap."

In its decision in appeal No. 4283 the Board of Appeals stated that the examiner had held that there was no invention in the "broad concept of adding a suitable anti-oxidant to the size after it had once been discovered that the size was liable to oxidize," and, after some discussion of the reference of record, stated that it agreed with the views expressed by the Primary Examiner that "no invention was involved in the broad conception of adding an anti-oxidant to the saponified dry rosin size."

In a second decision made in response to appellant's motion for a rehearing, the Board of Appeals stated that claim 4 differed somewhat from the other claims there involved in that it called for "saponified rosin, free rosin and an antioxidant for both the free rosin and saponified rosin," and with reference to the hereinafter quoted excerpt from the Campbell reference said: "We believe it is fair to assume that this article tends to indicate that both rosin soaps and free rosin do oxidize, and we are still of the opinion that after appellant discovered that his rosin size tended to oxidize under certain conditions, no invention was involved in merely adding a suitable antioxidant to overcome this difficulty."

The statements contained in the Campbell publication to which allusion was made by each of the tribunals of the Patent Office read: *"When exposed to the air, rosin soaps turn darker owing to the oxidation of the unsaturated rosin acids.* But they do not become readily rancid from the oxidation of the animal or vegetable fatty acids present, since the rosin seems to take up the oxygen and prevent the fatty acids from becoming rancid. *The rosin acts as an antioxidant or preservative. For this reason small amounts of rosin are added to laundry and toilet soap products to prevent rancidity."* (Italics ours.)

In his statement to the Board of Appeals in *appeal No. 4282,* the Primary Examiner, among other things, said: "No references are cited, the rejection of the claims being based solely on the ground of undue breadth. * * * Applicant lists on pages 1 and 2 of the specification, fourteen specific compounds said to be found effective for the purpose described. However, the action here involved is catalytic in nature and the effectiveness of any specific compound can only be determined by experiment. Generalizations are seemingly meaningless and the fact that certain compounds of a particular type are found effective does not necessarily indicate that this is likewise true with respect to all compounds of the same type. See for example, In re Sibley, 33 U.S.P.Q. 212 and the cases cited therein. *Moreover, in view of the present state of the art, the broad concept*

*of adding an anti-oxidant to any specific material, such as rosin size, to render the same resistant to oxidation, can hardly be regarded as an act of invention.* The rejection of the claims for the reasons expressed above is accordingly believed sound." (Italics ours.)

In his final decision, dated June 6, 1938, from which appeal was taken by appellant to the Board of Appeals, the Primary Examiner stated that the rejection of all of the claims here involved "as being too broad as to the anti-oxidant disclosed, *for the reasons expressed in the previous Office action is believed sound and is repeated.* The only compounds specifically disclosed as being suitable for the purpose described are those listed on pages 1 and 2 of the present specification. It is pointed out that *all of the amines* [fourteen in number] listed on these two pages *are di-aryl amino compounds."* (Italics ours.)

The "previous Office action" referred to in the quoted excerpt from the final decision of the Primary Examiner was dated February 24, 1938. In that action, the Primary Examiner, with reference to appealed claims 15, 16, and 17, stated:

"In claim 15 applicant is claiming at least two of the amino hydrogen atoms of the aromatic amino compound *are* replaced by aryl groups. Applicant has only disclosed compounds which have only two of the hydrogen atoms of the amino group replaced by aryl groups.

"In claim 16, applicant is claiming an aromatic amino compound which implies only one hydrogen atom of the amino group replaced by an aryl group. The compounds disclosed have two of the hydrogen atoms of the amino group replaced by aryl groups. "Claim 17 is claiming an organic compound which has at least one nitrogen atom. Such a compound need not be an amino compound."

It would seem to be apparent from the examiner's statement in appeal No. 4282 that all of the claims here involved, except claims 15, 16, and 17, were rejected on the ground that, in view of the state of the art, "the broad concept of adding an antioxidant" to appellant's dry rosin size to render it resistant to oxidation did not involve invention. It is obvious, however, that that ground of rejection could not apply to claims 15, 16, and 17, because those claims are limited to certain named compounds as antioxidants. As to those claims,

the examiner held, as will be noted from the hereinbefore quoted excerpt from the "previous Office action," that appellant was not entitled to make them because the antioxidants specified therein were not disclosed in appellant's application as originally filed.

Restated for the purpose of clarity, the Primary Examiner held that, in view of the state of the art, it did not involve invention to discover that the addition of an antioxidant to appellant's dry rosin size would render it resistant to oxidation; that, therefore, claims 1 to 5, inclusive, and 8, which merely call broadly for an antioxidant for the purpose mentioned, were unpatentable; and that appellant was not entitled to claims 15, 16, and 17, because he did not disclose the specific compounds called for by those claims in his application as originally filed.

The Primary Examiner rejected all of the appealed claims on the further ground that the action of antioxidants in appellant's dry rosin size was of a catalytic nature, and stated that the effectiveness of any specific compound as an antioxidant could be determined only by experiment, and that it does not follow that, because a compound of a particular type is found to be effective, all compounds of the same type would necessarily be effective.

In its decision in appeal No. 4282, the Board of Appeals relied upon the Campbell reference which was a part of the record and stated that it appeared therefrom that "saponified rosin and free rosin tended to oxidize." The board further stated that the Primary Examiner was justified in holding that the use broadly of an antioxidant in "a saponified compound known to take up oxygen when exposed to the air did not amount to invention," and, accordingly, affirmed the decision of the examiner rejecting claims 1 to 5, inclusive, and 8 on that ground.

In affirming the decision of the Primary Examiner rejecting claims 15, 16, and 17, the Board of Appeals said: "Claim 15 states that the anti-oxidant is an aromatic amino compound having at least two of its amino hydrogen atoms replaced by aryl groups. This claim is somewhat broader than allowed claim 14 which is limited to a di-aryl amino compound as the anti-oxidant. Claim 16 defines the anti-oxidant used broadly as an aromatic amino compound while claim 17 defines the anti-

oxidant as an organic compound characterized by having at least one nitrogen atom and at least two aryl groups in the molecule. Appellant has listed 14 specific anti-oxidants but the examiner has held that since the action of anti-oxidants is of a catalytical nature, it cannot be predicted that all substances falling within the class of aromatic amino compounds would necessarily be effective and that whether or not they can be used as anti-oxidants for rosin size can only be determined by experiment. This reasoning appears to us to be sound and should be affirmed."

Although it is conceded by counsel for appellant in his brief that it "could not well be denied" that the term "antioxidant" describes a class of materials "of now recognized chemical relationship to which the chemist may turn when he wishes to inhibit oxidation *in a particular substance* * * because anti-oxidants have been used in the rubber industry, in the gasoline industry, in the fatty soap industry, in the linseed oil industry and others," and that an applicant would not be entitled to a "broad patent on anti-oxidants" in those "industries," counsel, nevertheless, contends that as appellant's product (dry rosin size) is a new article of commerce in which "both the physical and chemical nature of the material under consideration differs so markedly from materials in other industries where anti-oxidants were known to be needed" appellant is entitled to claim broadly the use of antioxidants to prevent oxidation of his patented dry rosin size. (Italics ours.) It is further contended by counsel for appellant that the tribunals of the Patent Office erred in holding that the action of an antioxidant in appellant's dry rosin size is of a catalytic nature, and that, therefore, all of the appealed claims are patentable.

As stated by the Primary Examiner, appellant's product is saponified rosin (rosin soap) containing more or less free rosin. It is true that it is not precisely the same product disclosed in the reference; nevertheless, we are in agreement with the conclusion reached by the Patent Office tribunals that, in view of the disclosure in that reference, the broad conception that appellant's dry rosin size could be made resistant to oxidation by the addition of an antioxidant does not involve invention, and that, therefore, claims 1 to 5, inclusive, and 8 are unpatentable.

As to claims 15, 16, and 17, the Board of Appeals, as hereinbefore noted, limited its discussion to the ground of rejection that as the action of antioxidants in appellant's dry rosin size was of a catalytic nature, and as the effectiveness of such antioxidants could be determined only by experiment, appellant was not entitled to claim all substances falling within the class of aromatic amino compounds, but rather was limited to such compounds as were specifically enumerated in his application as originally filed.

Counsel for appellant argues at considerable length in his brief that the action of the antioxidants specified in claims 15, 16, and 17 is not of a catalytic nature, and states that, although he is unable to find an adequate definition of the term "antioxidant," another "expression" is "inhibitor," and, although the definition of an "inhibitor," found in Volume V of the Encyclopedia Britannica, 1937 Edition, page 22, is not satisfactory, it is sufficient to show that "while catalysts accelerate the course of a reaction, certain substances can hinder or even entirely stop a reaction and that these substances are termed inhibitors." Our attention is called by counsel to a statement in an article by Smith and Wood (published in the "Industrial and Engineering Chemistry," Volume 18, No. 7, issued 1926, beginning on page 691 and concluding on page 694, entitled "Inhibiting Agents in the Oxidation of Unsaturated Organic Compounds"), which is included in the record in appeal No. 4283, wherein it is stated, among other things, under the heading "Summary," that "The antioxidant only inhibits or prevents oxidation for a time. The rate of reaction of oxidation after the effect of the inhibitant is lost is the same as before."

The publication relied upon by counsel for appellant would seem to indicate that generally the action of antioxidants or inhibitors is not of a catalytic nature, unless, as stated therein, the concentration is so great that the antioxidant acts as a "positive oxygen catalyst."

It is stated in the brief of counsel for appellant that "when the inhibitor [in appellant's composition] has been used up the original speed of reaction proceeds as rapidly as before the addition of the antioxidant," and that, therefore, the action of the antioxidant is not of a catalytic nature.

It may be, as argued by counsel for appellant, that the action of an antioxidant in appellant's composition is not of a catalytic nature. However, the alleged facts upon which counsel relies in support of his contention do not appear of record.

Counsel for appellant further states in his brief that the Primary Examiner relied upon the decision of this court in the case of In re Sibley, 88 F.2d 960, 24 C.C.P.A., Patents, 1143, as authority for his holding that the "anti-oxidant art is an exhausted one which precludes generic claims."

Our decision in Re Sibley, supra, did not so hold, nor do we understand from his decision that the examiner held that it did.

The tribunals of the Patent Office neither gave reasons nor cited authority in support of their holdings that the action of the antioxidants specified in claims 15, 16, and 17 is of a catalytic nature, nor is there anything of record upon which we may base a finding as to the correctness or incorrectness of their holdings in that respect. However, the issue as to the patentability of those claims does not necessarily depend upon the nature of the action of the antioxidants called for therein.

As hereinbefore noted, the Primary Examiner held that the antioxidants called for by those claims include compounds not disclosed in appellant's application here involved as originally filed; that all of the antioxidants disclosed in appellant's specification (fourteen in number) are "di-aryl amino compounds"; that claim 15 is broader than appellant's disclosure in that it calls for an "antioxidant aromatic amino compound having *at least two* [which, of course, would include more than two] of its amino hydrogen atoms replaced by aryl groups," whereas, appellant disclosed in his involved application as originally filed compounds having *but two* of the amino hydrogen atoms replaced by aryl groups (italics ours); that claim 16 is broader than appellant's disclosure in that it calls broadly for an antioxidant aromatic amino compound, whereas, appellant disclosed in his application as originally filed only di-aryl amino compounds; and that claim 17 is broader than appellant's original disclosure in that it calls for an antioxidant organic compound having "at least one nitrogen atom and at least two aryl groups

in the molecule," which compound, the examiner stated, is not necessarily an amino compound.

In addition to claims calling for certain specific di-aryl amino compounds as antioxidants in his dry rosin size, appellant has been allowed a claim—claim 14—which calls broadly for a "di-aryl amino compound" as an antioxidant, the Primary Examiner evidently being of opinion that there is a sufficient number of the members of the di-aryl amino compound group enumerated in appellant's application to warrant the allowance of such a claim. The Primary Examiner held, however, that appellant was not entitled to claims calling for antioxidants not included within the di-aryl amino compound group, and, accordingly, rejected all of the appealed claims for that reason.

■ It is true that the Board of Appeals did not discuss that ground of rejection. However, it did not reverse the Primary Examiner's holding in that respect. Accordingly, the decision of the board is in legal effect an affirmance of the decision of the Primary Examiner on that ground of rejection. In re Ball, 81 F.2d 242, 23 C.C.P.A., Patents, 830.

■ It is well settled that in cases involving chemicals and chemical compounds which differ radically in their properties it must appear in an applicant's specification "either by the enumeration of a sufficient number of the members of a group or by other appropriate language, that 'the chemicals or chemical combinations'" included in the claims are capable of accomplishing the desired result. In re Steenbock, 83 F.2d 912, 23 C.C.P.A., Patents, 1244, and cases therein cited.

■ We are of opinion that claims 15, 16, and 17 were properly rejected by the Primary Examiner on the ground that they are broader than appellant's original disclosure.

The appeals as to claim 1, in appeal No. 4282, and claims 1, 2, 3, 5, and 8, in appeal No. 4283, are dismissed, and, for the reasons hereinbefore stated, the decisions of the Board of Appeals as to the other appealed claims are affirmed.

Affirmed.